IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| STEVEN M. JACOBSEN, | ) | |
| Plaintiff, | ) | Civil Action No. 7:13cv00289 |
| | ) | |
| v. | ) | |
| | ) | |
| HAROLD W. CLARKE, *et al.*, | ) | By: Robert S. Ballou |
| Defendants. | ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

This matter is before the court on Jacobsen's motions to enforce the court's settlement order and for an expedited hearing on the matter, which have been referred to me for a Report and Recommendation.[1] I have carefully reviewed the submissions from the parties and the applicable law. I conclude that a hearing on the issues will not aid in the decisional process and, thus, have prepared my report and recommended disposition from the record before me. For the reasons stated herein, I find that Jacobsen has not demonstrated that the defendants violated the terms of the settlement agreement and, therefore, I recommend that the court deny Jacobsen's motions.[2]

## I.

Jacobsen, a Jewish inmate, filed this action, complaining that the defendants violated his rights by failing to provide him with a kosher Passover meal that meets the requirements of his

---

[1] By order entered February 14, 2014, the court dismissed this action with prejudice but retained jurisdiction over the matter for 60 days for purposes of enforcing the terms of the settlement agreement. By order entered April 8, 2014, the court extended its jurisdiction until the resolution of the instant motions.

[2] I note that Jacobsen's motions are not motions for preliminary injunctive relief. A preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). This case is closed per the parties' agreement, and the court only retained jurisdiction over this matter for purposes of enforcing the terms of the settlement agreement. To the extent Jacobsen's allegations could be construed to allege claims of retaliation, cruel and unusual punishment, or a violation of some other federal right, such claims may be raised in a separate civil action after Jacobsen has exhausted administrative remedies.

religion. The defendants filed a motion for summary judgment, and the court referred the matter for mediation. At the mediation, Jacobsen actively and successfully participated in the negotiation and development of an agreement that affected changes to the section of the Virginia Department of Corrections' ("VDOC") Food Service Manual that governs Passover meals throughout the entire VDOC.[3] Pursuant to the agreement, the VDOC will provide a Passover meal that "reasonably accommodates" Jewish dieters with meals that "meet basic nutritional needs." These meals must be free of leavened food items, legumes, and grains.

---

[3] As a result of the parties agreement, Chapter 4, Section VII of the VDOC's Food Service Manual now states (changes are indicated in bold):

A. The Passover religious observance meals provide a religious diet that reasonably accommodates certain religious or spiritual dietary needs to the extent feasible during Passover. Religious dietary accommodations provided under this procedure meet basic nutritional needs.

B. Passover religious observance meals are available only to offenders who require special religious diets during Passover and are for accommodating their sincere religious practices.

C. A memorandum will be sent from the Chief of Corrections Operations annually to notify facilities of the dates for Passover.

D. Changes- The planned Passover observance will not be changed at the facility level.

E. **A "Passover Meal" is a meal from the common fare menu which is free of leavened food items, legumes, and grains. Matzo shall be substituted for leavened food items.**

F. **Offenders who are not on the common fare menu, shall have matzo substituted for bread and fruit substituted for dessert items on their regular food tray. Alternatively, these offenders may choose to eat from the common fare Passover Meal throughout the Passover period. Any offender who seeks a regular tray during the Passover Period, after having chosen to participate in the common fare Passover Meal, shall be assessed the cost of that common fare tray. All rights available under Grievance Procedure OP 866.1 shall be available to challenge any sanction imposed.**

G. **Offenders who are on the common fare menu shall be provided a Passover Meal throughout the Passover period.**

H. **Offenders who wish to order a kosher-for-Passover meal package, may do so from a Virginia Department of Corrections-approved third-party vendor. Any dollar limit which is set shall allow the inmate to have three full meals daily during the Passover period.**

I. Offenders desiring to observe Passover should make their intentions known in writing, **including which meal plan they desire,** to the Facility Unit Head or designee at least 30 days prior to the beginning of Passover.

By order entered February 4, 2014 the court approved the parties' terms of settlement and dismissed this case. On April 1, 2014, Jacobsen filed the instant motions, alleging that the defendants failed "to adhere to the parties' terms of settlement" because the proposed 2014 Passover menu is "neither 'reasonable' nor 'nutritious.'" Notably, Jacobsen does not allege that the menu violates his First Amendment or other federal religious rights. This year's Passover begins on April 14, 2014 and ends on April 22, 2014.

By order entered April 4, 2014, the court directed the defendants to respond to Jacobsen's motions. Defendants have responded and included an affidavit by Linda Shear, a Registered Dietician and the Food Service Dietician for the VDOC. Defendants have also filed, as directed by the court, the 2014 Passover menu used throughout the VDOC.[4]

## II.

This court has the authority to enforce the settlement agreement. See, e.g., Williams v. Prof'l Transp., Inc., 388 F.3d 127, 131 (4th Cir. 2004); Moore v. Beaufort Cnty., 936 F.2d 159, 162 (4th Cir. 1991). In ruling on a motion to enforce a settlement, the court draws upon standard contract principles. Bradley v. Am. Household, Inc., 378 F.3d 373, 380 (4th Cir. 2004); Hensley v. Alcon Labs., Inc., 277 F.3d 535, 540 (4th Cir. 2002). I find that Jacobsen has not demonstrated that the defendants violated the terms of the settlement agreement and, therefore, recommend that his motions be denied.

Jacobsen alleges that the defendants have violated the terms of the settlement agreement because the 2014 Passover menu is not nutritious and is "unbalanced and punitive." In support of his arguments, Jacobsen argues that the menu provides for excessive amounts of matzo, hardboiled eggs, and margarine over the course of the 8½ days of Passover. Jacobsen states that matzo is "nutritionally worthless and unpleasant to eat by design." Jacobsen asserts that "matzo

---
[4] I note, however, that defendants provided only 5 ½ days of the 2014 Passover menu.

3

is decidedly not intended to be used as the primary staple and source of caloric intake" during Passover, but instead, "it reminds Jews of their forebears' misery and struggle." The 2014 Passover menu provided by the defendants indicates that inmates will be served between 7 and 11 matzos each day. Jacobsen also argues that while eggs are "Passover compliant and even healthy," eating an excessive amount of them is not healthy and well exceeds the recommended daily allowance of cholesterol. The menu provided by the defendants indicates that inmates will be served between 6 and 9 hardboiled eggs each day. Finally, Jacobsen argues that the "most asbsurd[]" part of the menu is the "positively unhealthy" amount of margarine that will be served. The menu provided by the defendants indicates that inmates will be served between 8 and 13 teaspoons of margarine each day.

Shear, the VDOC Dietician who prepared the 2014 Passover menu, explains that she started with a regular common fare menu and made substitutions with foods that both complied with the settlement agreement and balanced the inmates' intake of calories, carbohydrates, and proteins. Pursuant to the agreement and to comply with religious requirements, matzo is to be substituted for leavened food items. Accordingly, Shear substituted calorically equivalent amounts of matzo where the common fare menu provided for slices of bread.

Further, legumes and grains are prohibited from the Passover menu. Because the vegetarian beans and peanut butter from the common fare menu contain legumes, Shear replaced these items for the Passover menu. In place of 1½ cups of vegetarian beans from the common fare menu, inmates eating from the Passover menu will receive 3 hardboiled eggs, 3 teaspoons of margarine, and 1 ounce of mayonnaise. In place of $^1/_3$ cup of peanut butter from the common fare menu, inmates eating from the Passover menu will receive ½ cup cottage cheese, 3 hardboiled eggs, 3 teaspoons of margarine, and 1 ounce of mayonnaise. Because bran flakes,

corn flakes, oatmeal, and farina from the common fare menu contain grains, Shear replaced these items with calorically equivalent amounts of matzo. Because the soy/rice mixes from the common fare menu contain legumes and grains, Shear replaced these items with 3 hardboiled eggs, 3 teaspoons of margarine, and 1 ounce of mayonnaise.

Shear also states that she does not believe the number of hardboiled eggs provided for in the 2014 Passover menu to be unhealthy. With regard to Jacobsen's cholesterol concern, Shear indicates that inmates "with concerns about cholesterol are instructed to remove the yolk and eat only the egg whites which contain the bulk of the protein."

Defendants argue that "the VDOC has made a good faith effort to comply with [the religious dietary] restrictions while still ensuring caloric and nutritional requirements." Further, defendants note that, to the extent Jacobsen does not like the choices offered, there are alternatives that would allow Jacobsen a more varied diet during Passover. For example, Jacobsen could order the Kosher for Passover tray offered for sale at the commissary or he could supplement his diet with appropriate items from the commissary.[5]

Based on the evidence before the court, I find that Jacobsen has failed to prove beyond his own conclusions that the 2014 Passover menu fails to "meet basic nutritional needs," so as to violate the terms of the settlement agreement.

Moreover, even if the court were to look at Jacobsen's allegations from a constitutional basis, Jacobsen does not allege, and the record does not demonstrate, that the 2014 Passover menu violates his First Amendment or other federal rights. Likewise, Jacobsen's bald allegations of inadequate nutrition in the face of the affidavit of the Registered Dietician who prepared the 2014 Passover menu would not meet the standard required to prove a claim of cruel

---

[5] The court understands from defendants' response that these dietary alternatives and/or supplements will be available to Jacobsen and other Jewish inmates within the VDOC throughout Passover.

and unusual punishment.  See Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (to state a claim of cruel and unusual punishment, a plaintiff must allege "the prison official acted with a sufficiently culpable state of mind and . . . [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious.").

### III.

Based on the foregoing, I find that Jacobsen has not demonstrated that the defendants violated the terms of the settlement agreement and, therefore, **RECOMMEND** that Jacobsen's motions (ECF Nos. 31 and 32) be **denied**.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge.  Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within fourteen days hereof.  Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send copies of this Report and Recommendation to the parties and to fax the document to Jacobsen.

    Enter:  April 10, 2014

    *Robert S. Ballou*

    Robert S. Ballou
    United States Magistrate Judge